UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

JUDGE DAVID BRIONES

EP23CV0178

| | |
|---|---|
| BRANDON CALLIER, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| PROSPERUM CAPITAL PARTNERS LLC d/b/a ARSENAL FUNDING, a Delaware Limited Liability Company, and TODAYS ADVANCE CREDIT INC, a New York Corporation | § |
| | § |
| Defendants. | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant PROSPERUM CAPITAL PARTNERS LLC d/b/a ARSENAL FUNDING ("Arsenal") is a limited liability company organized and existing under the laws of Delaware and can be served via registered agent Agents and Corporation, Inc at 1201 Orange St, Ste 600 One Commerce Center, Wilmington, Delaware 19801.

3. Defendant TODAY'S ADVANCE CREDIT INC ("Today's Advance") is a corporation organized and existing under the laws of New York and can be served via registered agent Debra Gotterup, 3550 Riverside Drive, Oceanside, New York 11572.

### JURISDICTION AND VENUE

1

4. This Court has subject matter jurisdiction over Counts I under 28 U.S.C § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

5. The Court has supplemental jurisdiction over Counts II under 28 U.S.C § 1367.

6. This Court has specific personal jurisdiction over Defendant Arsenal because Defendant Arsenal purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant Arsenal's purposeful contacts with Texas and the litigation:

   a. Defendant Arsenal targets Texas when marketing small business loans and regularly conducts business in this District, including telephone solicitation.

   b. Its agent Today's Advance, called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Arsenal's business funding.

   c. These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant Arsenal, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021

7. This Court has specific personal jurisdiction over Defendant Today's Advance because Today's Advance purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Today's Advance's purposeful contacts with Texas and the litigation:

   a. Today's Advance targets Texas when marketing business funding and regularly conducts business in this District, including telephone solicitation.

2

    b. Today's Advance called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Arsenal's business funding.

    c. Today's Advance's calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021

8. Venue is proper under 28 U.S.C. § 1391(b)(2).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted

3

by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

18. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

19. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

20. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

21. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

22. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

23. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

24. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

25. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

26. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

27. The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

28.  The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

29.  Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

30.  The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## FACTUAL ALLEGATIONS

31.  Plaintiff personally successfully registered his phone number ending in 4604 on the National Do-Not-Call Registry ("DNC") in December 2007.

32.  Plaintiff was registered on the National DNC at all times relevant to this Complaint.

33.  Plaintiff has been besieged with phone calls related to a merchant cash advance (MCA).

34.  MCAs are unregulated "loans" made via an agreement to purchase future revenues of a business. MCAs are designed to bypass usury laws that prevent companies from charging extraordinary interest rates. MCAs often exceed 60% interest rates.

35.  Defendant Arsenal employs, contracts, and/or authorizes Independent Sales Organization ("ISO"), like Defendant Today's Advance, to solicit MCAs to business owners.

6

36.　Plaintiff has been inundated with phone calls from companies offering MCAs. This includes receiving at least 49 phone calls from Defendant Today's Advance on behalf of, and at the direction of, Defendant Arsenal, soliciting merchant cash advances.

37.　Plaintiff received the first call from phone number 718-865-2026 on March 30, 2022.

38.　On April 5, 2022, Defendant Today's Advance called Plaintiff at 6:37 AM and woke Plaintiff up from his sleep.

39.　On April 6, 2022, Defendant Today's Advance called Plaintiff at 7:07 AM and woke Plaintiff up from his sleep.

40.　On April 7, 2022, Defendant Today's Advance called Plaintiff at 7:17 AM and woke Plaintiff up from his sleep. Plaintiff responded to this phone call by sending a text message at 7:19 AM stating:

"You've called multiple times at 7 AM in the morning., Please don't call again."

41.　On April 7, 2022, Defendant Today's Advance called Plaintiff at 8:45 AM. This phone call was a little more than an hour after being told to not call again.

42.　From April 8, 2022, to April 12, 2022, Plaintiff received a total of 14 phone calls from Defendant Today's Advance marketing the MCA services of Defendant Arsenal. Today's Advance called Plaintiff an average of 4.5 times per weekday during this time.

43.　Plaintiff was annoyed at the constant calls and DNC refusal. Therefore, for the sole purpose of unearthing the entities responsible for the phone calls, Plaintiff engaged Today's representative in an email discussion.

44.　On April 12, 2023, Plaintiff received another phone call from 718-865-2026. This was despite having told the caller to not call again. Plaintiff declined the phone call. The caller

immediately called Plaintiff back despite Plaintiff having declined the phone call immediately preceding the second phone call and Plaintiff delivering a do not call request on April 7, 2022.

45. Plaintiff was aggravated with all of the phone calls and on April 12, 2022, for the sole purpose of finding out who kept calling Plaintiff before 8:00 AM in the morning, Plaintiff answered the phone. Plaintiff told Mr. Robert Evans that he had called Plaintiff while Plaintiff was getting ready for work. Plaintiff was on the phone for approximately one minute.

46. Plaintiff's information has been gathered and sold as leads to MCA lenders. Plaintiff was bombarded with hundreds of unwanted phone calls from brokers soliciting merchant cash advances.

47. The representative already had Plaintiff's information and sent Plaintiff an email with his contact information. The email came from robert@todaysadvance.com.

48. Plaintiff engaged Mr. Evans in order to determine who had called Plaintiff 20 times soliciting business funding, and on whose behalf those phone calls had been initiated.

49. On April 14, 2022, Plaintiff received an email from robert@todaysadvance.com containing a contract from Defendant Arsenal.

50. Table A below displays calls made to Plaintiff by Defendant Todays Advance on behalf of and at the direction of Defendant Arsenal.

**TABLE A**

| Number: | Date:      | Time:    | Caller ID:   | Notes:        |
|---------|------------|----------|--------------|---------------|
| 1.      | 03/30/2022 | 3:46 PM  | 718-865-2026 | Missed call   |
| 2.      | 03/31/2022 | 8:59 PM  | 718-865-2026 | Declined call |
| 3.      | 04/01/2022 | 11:17 AM | 718-865-2026 | Missed call   |

| 4.  | 04/04/2022 | 10:01 AM | 718-865-2026 | Missed call |
| --- | --- | --- | --- | --- |
| 5.  | 04/04/2022 | 12:07 PM | 718-865-2026 | Missed call |
| 6.  | 04/05/2022 | 6:37 AM  | 718-865-2026 | Missed call |
| 7.  | 04/05/2022 | 1:11 PM  | 718-865-2026 | Missed call |
| 8.  | 04/06/2022 | 7:07 AM  | 718-865-2026 | Missed call |
| 9.  | 04/07/2022 | 7:17 AM  | 718-865-2026 | Missed call |
| 10. | 04/07/2022 | 7:19 AM  | 718-865-2026 | DNC Request via text message |
|     | 04/07/2022 | 8:45 AM  | 718-865-2026 | Missed call |
| 11. | 04/08/2022 | 9:19 AM  | 718-865-2026 | Missed call |
| 12. | 04/08/2022 | 9:56 AM  | 718-865-2026 | Missed call |
| 13. | 04/08/2022 | 11:57 AM | 718-865-2026 | Missed call |
| 14. | 04/11/2022 | 6:46 AM  | 718-865-2026 | Missed call |
| 15. | 04/11/2022 | 11:16 AM | 718-865-2026 | Missed call |
| 16. | 04/11/2022 | 12:59 PM | 718-865-2026 | Missed call |
| 17. | 04/12/2022 | 6:50 AM  | 718-865-2026 | Missed call |
| 18. | 04/12/2022 | 8:33 AM  | 718-865-2026 | Declined call |
| 19. | 04/12/2022 | 8:33 AM  | 718-865-2026 | Called right back. One minute phone call |
| 20. | 04/12/2022 | 1:55 PM  | 718-865-2026 | Less than one minute |
| 21. | 04/12/2022 | 1:55 PM  | 718-865-2026 | Less than one minute |
| 22. | 04/12/2022 | 2:26 PM  | 718-865-2026 | Missed call |
| 23. | 04/12/2022 | 2:27 PM  | 718-865-2026 | Missed call |
| 24. | 04/12/2022 | 2:59 PM  | 718-865-2026 | Less than 2 minutes |
| 25. | 04/13/2022 | 7:34 AM  | 718-865-2026 | Missed call |

| 26. | 04/13/2022 | 7:53 AM | 718-865-2026 | Missed call |
|---|---|---|---|---|
| 27. | 04/14/2022 | 8:08 AM | 718-865-2026 | Missed call |
| 28. | 04/14/2022 | 8:25 AM | 718-865-2026 | Missed call |
| 29. | 04/14/2022 | 9:07 AM | 718-865-2026 | Missed call |
| 30. | 04/14/2022 | 9:33 AM | 718-865-2026 | Missed call |
| 31. | 04/14/2022 | 10:09 AM | 718-865-2026 | Declined call |
| 32. | 04/14/2022 | 10:18 AM | 718-865-2026 | Missed call |
| 33. | 04/14/2022 | 12:01 PM | 718-865-2026 | Missed call |
| 34. | 04/14/2022 | 12:42 PM | 718-865-2026 | Missed call |
| 35. | 04/14/2022 | 3:13 PM | 718-865-2026 | Missed call |
| 36. | 04/18/2022 | 10:06 AM | 718-865-2026 | Missed call |
| 37. | 04/18/2022 | 11:52 AM | 718-865-2026 | One-minute phone call |
| 38. | 04/19/2022 | 8:43 AM | 718-865-2026 | Missed call |
| 39. | 04/19/2022 | 9:25 AM | 718-865-2026 | Missed call |
| 40. | 04/19/2022 | 10:37 AM | 718-865-2026 | Missed call |
| 41. | 04/19/2022 | 11:51 AM | 718-865-2026 | Missed call |
| 42. | 04/19/2022 | 12:33 PM | 718-865-2026 | One-minute phone call |
| 43. | 04/20/2022 | 9:06 AM | 718-865-2026 | Missed call |
| 44. | 04/20/2022 | 12:44 PM | 718-865-2026 | Missed call |
| 45. | 04/20/2022 | 2:31 PM | 718-865-2026 | Declined call |
| 46. | 04/21/2022 | 12:22 PM | 718-865-2026 | Missed call |
| 47. | 04/21/2022 | 1:16 PM | 718-865-2026 | Missed call |
| 48. | 04/25/2022 | 7:55 AM | 718-865-2026 | Missed call |

| 49. | 04/29/2022 | 7:40 AM | 718-865-2026 | Missed call |

51.     On April 18, 2022, at 11:52 AM, Plaintiff received a phone call from 718-865-2026. Plaintiff answered the phone and informed the representative he was not interested in signing the contract and to not call back.

52.     Defendant Today's Advance, at the direction of Defendant Arsenal, called Plaintiff at least 11 times after the April 18, 2022, DNC request.

53.     On March 5, 2023, Plaintiff searched on the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas Solicitation Registration as required by Texas Business and Commerce Code 302.101 for any of the Defendants.

54.     Defendants Arsenal and Today's Advance do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

55.     Defendants Arsenal and Today's Advance participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful telemarketer's calls while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful solicitation calls.

56.     Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

57. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

58. No emergency necessitated the calls.

59. Through information and belief, Defendants Today's Advance and Arsenal did not have a written do-not-call policy while it was sending Mr. Callier unsolicited calls.

60. Through information and belief, Defendants Today's Advance and Arsenal did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
### AS A RESULT OF THE CALLS

61. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

62. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

63. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

64. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### VICARIOUS LIABILITY OF ARSENAL FOR CALLS PLACED BY TODAY'S ADVANCE

65. Arsenal is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as Today's Advance. In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

66. Arsenal merchant cash advances ("MCAs") through direct telephone solicitation by its hired telemarketer Today's Advance, who acts on its behalf. Today's Advance provides live, hot leads to Arsenal and Arsenal accepts the leads. Today's Advance was Arsenal's agent when it

made the prohibited calls on behalf of and with the actual authority from Arsenal pursuant to a contract that governs Today's Advance's telemarketing for Arsenal.

67.   Arsenal directs, controls, authorizes, and pays Today's Advance to generate live-transfer leads for Defendant's MCAs through telephone solicitation. Moreover, it requires, authorizes, or at least permits Today's Advance's telemarketers to solicit explicitly for MCAs.

68.   Arsenal sets the criteria for qualifying leads, which Today's Advance must follow, and Today's Advance transfers leads qualified on those criteria exclusively to Arsenal.

69.   On information and belief, Arsenal writes or at least approves the call script Today's Advance's telemarketers use when qualifying leads for Arsenal.

70.   Today's Advance telemarketers are Arsenal's associates and do nothing to disturb the impression that Today's Advance's telemarketers work for and speak and act on behalf of, Arsenal.

71.   From Today's Advance's telemarketer's initial call through the last call received by Plaintiff, Arsenal's MCA solicitations constitute a singular, coordinated marketing effort devised, authorized, directed, and controlled by Arsenal, the principal, with Today's Advance acting as Arsenal's agent.

72.   Today's Advance, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Arsenal's criteria, and then submitted Plaintiff's information to Arsenal's advisor to continue marketing merchant cash advances.

### Plaintiff's Cell Phone is a Residential Number

73.   The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 17 years and primarily relies on cellular phones to

communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose

## Violations of the Texas Business and Commerce Code § 302.101

74. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

75. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

76. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

77. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

78. Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

14

79. Under Texas Business and Commerce Code § 302.302(d) Plaintiff is entitled to all reasonable costs of prosecuting the case including attorney's fees, deposition costs, investigation costs, and witness fees.

## I. FIRST CLAIM FOR RELIEF
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)
### (Against All Defendants)

80. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-79.

81. Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

82. Plaintiff was statutorily damaged at least forty-nine (49) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

83. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

84. As a result of Defendant's violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

85. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.  SECOND CLAIM FOR RELIEF
### (Violations of The Texas Business and Commerce Code 302.101)
### (Against All Defendants)

86.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-79.

87.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

88.     Mr. Callier is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

89.     Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. **Texas Business and Commerce Code 302.302(d).**

## III.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.     An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.   An award of $1500 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 49 calls.

E.   An award of $5,000 in statutory damages arising from 49 violations of the Texas Business and Commerce code 302.101.

F.   An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.   An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity.

H.   Such further relief as the Court deems necessary, just, and proper.

May 1, 2023,                                            Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com